**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| JANET GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| vs. | ) | No. 09-0541-CV-W-JCE-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Plaintiff is appealing the final decision of the Secretary denying her application for

disability insurance benefits ["DIB"] under Title II of the Act, 42 U.S.C. 401, et seq. Pursuant to

42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following

reasons, the Secretary's decision will be reversed.

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial

evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g.,

Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such

evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197,

229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole.  <u>Haynes v. Shalala</u>, 26 F.3d 812, 814 (8th Cir. 1994).

<u>Discussion</u>

Plaintiff, who was 49 years old at the  hearing before the ALJ, alleges disability because of curvature of the spine, rheumatoid arthritis, and fatigue.   She has a high school education and two years of college.  She has past relevant work as an accounting clerk, administrative assistant, and temporary worker doing sedentary jobs.

The ALJ found that plaintiff  has not engaged in substantial work activity since the amended alleged onset date of disability, October 1, 2004.  She further found that plaintiff suffered from the following severe impairments:  arthritis, curvature of the spine, and fatigue.  It was her opinion that plaintiff had the residual functional capacity ["RFC"] to perform sedentary work or work that requires maximum lifting  or carrying of ten pounds occasionally and less than ten pounds frequently; sitting for a total of six hours in an eight-hour day with unlimited ability to push/pull; standing and/or walking for  a total of two hours in an eight-hour day with normal breaks and rest periods; and to occasionally climb and perform all other postural positions.   She also found that plaintiff "has significant non-exertional limitations." [Tr. 23]. The ALJ  found that plaintiff was able to perform her past relevant work as an accounting clerk, administrative assistant and temporary worker doing clerical jobs.   Therefore, the ALJ found that she was not disabled because she could perform limited sedentary work.

Plaintiff testified at the hearing that she was last working doing temporary assignments through Kelly Services.  She quit working because of having severe colitis, and being weak and

fatigued. Being fatigued is a daily occurrence.  The arthritis, which started in her hands and feet, has spread to her lower and upper back, neck, hips, knees and ankles. She is stiff when she wakes up in the morning, and is sore from lying in bed; she has to be careful with her first few steps as she tends to stumble.  She has extreme pain in her hands, pain in her back most of the time, and some knee pain. The site of the pain fluctuates in her body from day-to-day.  She still experiences weakness and has to have something to pull herself up with when she bends down. She has weight gain and drowsiness from the medication she takes. She takes two medications in the morning, which both cause drowsiness, and repeats one in the afternoon. Through the years, her arthritis has caused her to be more susceptible to drowsiness.  Plaintiff lives with her sister. Typically, she gets up around 6:30, and then will lie back down for a couple of hours later in the morning.  This seems to help with the pain.  After she gets dressed in late morning or early afternoon, she picks up around the house, starts dinner, watches television, reads and listens to music.  She is usually in bed around 10:30 or so.  She does most of the laundry, which is spread out over two to three days; and does some of the housecleaning, where she only does a few rooms, with resting and breaks.  She described that process as being where she might dust the living room and then sit down and rest,  and then go to the next room.  She might do no more than three rooms in one day.  She takes frequent breaks because she tires so easily.  Her sister then runs the vacuum when she gets home.  She does drive, and can comfortably drive a car about an hour.  Plaintiff testified that she did not believe that she could work at even a sit-down job because she has trouble staying awake.  She thought she could walk perhaps a mile or for an hour without having to rest or sit down.  She could carry five pounds or less.  Plaintiff stated that she has trouble sitting in a chair for long periods of time, such as 15 to 30 minutes.  After half an

hour, she would have to stand for a couple of minutes to stretch and move her legs around. She could then resume sitting in an office chair, but she was not sure if she could do this for an eight-hour day. She notices that her lower back starts to tense up and hurt, and she will get stiff, so she will have to get up and stretch. In terms of other activities, plaintiff testified that she hasn't done much in the last couple of years except go to the grocery store, and get together with family to celebrate birthdays. She also has trips to the doctors. Plaintiff testified that her primary reason for not being able to work is the problem with sitting and staying awake. It was her testimony that the drowsiness was related to fatigue from having arthritis and to the medication.

Plaintiff contends that the ALJ's decision should be reversed because she failed to declare what weight she gave to some medical opinions. She asserts that if the ALJ had considered and given the proper weight to those medical opinions, the result would have been a finding of disability. She also contends that the ALJ erred in finding that she had a severe impairment of fatigue and then ignoring that severe impairment in formulating the RFC; and that the ALJ erred in relying on only a part of the vocational expert's testimony.

Defendant contends that substantial evidence supports the ALJ's evaluation of plaintiff's subjective complaints, which she found to be not entirely credible because of inconsistencies with the medical evidence and because her daily activities detracted from her credibility regarding the severity of her arthritis. It is asserted that the ALJ properly determined that medical treatment often controlled plaintiff's impairments, as evidenced by the medical records and doctors' notations. Additionally, it is asserted that the medical evidence failed to support plaintiff's allegations regarding the severity of her curvature of the spine because she had worked with this impairment; she reported in 2006 that she felt the scoliosis had stabilized; and

there is no medical evidence of significant deterioration of the curvature after she stopped working. It is further asserted that the medical evidence does not establish disabling fatigue; that plaintiff's daily activities detracted from her credibility; and that the ALJ properly considered the medical opinions of record. Specifically, it is asserted that she discussed Dr. Jones's examination and refused to credit all of his opinions because they were otherwise unsupported by the record. Regarding the RFC, defendant contends that plaintiff's argument that the ALJ erred in not including a limitation to account for her fatigue is without merit because she accounted for the fatigue in finding that she was limited to sedentary work. It is also asserted that the fatigue improved after she was treated for anemia, and that her daily activities were inconsistent with disabling fatigue.

A review of the record indicates that plaintiff was seen by a consultative physician, Dr. Idiculla, for a disability evaluation on January 26, 2005. After thoroughly examining plaintiff, reviewing records from her treating physician, and reviewing her history, Dr. Idiculla opined that, "It is obvious that [plaintiff] is not going to be able to be employed. She is not even appropriate for a sedentary job in view of her inability to sit for any extended period of time. Also note that her slowness and needing more time with her increasing malaise and fatigue indicates that she is having side effects from the rheumatoid arthritis." [Tr. 184]. The doctor also noted that, in terms of her walking, she walked slow and most of her movements were slow. "Effort was excellent." [Id.]. Dr. Idiculla diagnosed her with "rheumatoid arthritis [which] is presently under control but has potential for worsening," hypertension, acid reflux, colitis, and anxiety. [Tr. 184]. The doctor noted that her activities of daily living were compromised by rheumatoid arthritis, causing her to be slower. [Tr. 184-85]. The physician also opined that

plaintiff's long work history indicates that "she was motivated and has tried. I do not believe that a temporary job is also one that she can handle." [Tr. 185]. The ALJ gave little weight to this opinion because she found that it was not supported by the medical evidence, treatment records, or statements by plaintiff regarding her daily activities, or plaintiff's observations that her rheumatoid arthritis was controlled with medication.

Dr. Bronson, plaintiff's treating physician, who had treated her from 2001 until 2006, diagnosed her with rheumatoid arthritis, and somatic dysfunction of the thoracic spine. He found her condition to be complicated by anemia, osteopenia, a history of cervical spondylosis with intermittent radiculopathy, and old scoliosis surgery with some weakness in her legs, particularly her left, and hypertension. The record indicates various notations where Dr. Bronson treated her for shoulder pain related to the arthritis, persistent right hand pain in her fingers and up her forearm, back pain, pain throughout her body, as well as for chronic anemia, possibly related to the colitis. His medical records include notations that suggest that plaintiff's problems varied, but that she had repeated problems with pain from the rheumatoid arthritis throughout the long period of time that he treated her. In terms of medication and how it controls her condition, the doctor noted that when he tried to taper off the Prednisone, plaintiff said that she gets worse whenever she stops taking it, so he continued prescribe it on a daily basis. On the Physician's Residual Functional Capacity Form, Dr. Bronson found that she could lift less than ten pounds frequently, and a maximum of ten pounds at one time; that she could sit less than one hour at a time, and a total of four hours in an workday; could stand/walk less than one hour at a time; and one hour total in the workday; and could need to lie down less than one hour in a workday. He also found that she could not repetitively use her hands for simple grasping, fine

manipulation, repetitive motion, and to push/pull arms controls. He found her complaints of pain to be believable and that they were supported by the fused middle back, some wasting of her hand muscle, and problems with her ankle. He found that her ability to perform the functions delineated would be further reduced by pain, that the pain would be present even when she was not exceeding these activities, and that he had seen objective evidence of the pain himself. Dr. Bronson also noted that her degree of pain would be frequently debilitating, that he believed her complaints of fatigue, and that fatigue would further reduce her ability to function, that her fatigue would be occasionally debilitating, and that she would have a fair ability to deal with a loss stress job. It was the further opinion of Dr. Bronson that plaintiff would miss work more than three times a month because of her impairments, that she needed to use a cane, and that her back, the rheumatoid arthritis, and the back surgery would make it difficult for her to work on a sustained basis. He also opined that her medication made her drowsy.

The ALJ disagreed with plaintiff's treating physician, Dr. Bronson, giving little weight to his opinion that plaintiff would have difficulty working on a sustained basis, and that treatment of her impairments would cause more than three absences a month. The ALJ found that this opinion was inconsistent with Dr. Bronson's treatment notes and stated that a form questionnaire or checklist is deficient and has "inherent interpretative problems." [Tr. 20].

Additionally, the ALJ refused to credit all of the opinions of Dr. Jones, a rheumatology specialist, because she found that they were otherwise unsupported by the record. According to Dr. Jones's examination of plaintiff, she had a "[l]ong-standing history of rheumatoid arthritis on treatment with methotrexate and prednisone." [Tr. 355]. He noted some mild joint swelling in both hands, probable trochanteric bursitis of the right hip, scoliosis with prior surgery and some

continued alignment deformity, some back pain probably related to this abnormality, bilateral calluses on her feet with hallux valgus deformity, and history of anemia. The doctor noted the ten different medications plaintiff was taking. These medications include Buspar, Prednisone, Zestril, Dyna Care, Methotrexate, Nexium, and Actonel. He also observed that plaintiff stated that she had back pain on a fairly long-term basis, that she had increased discomfort with prolonged sitting, and that she has to move about because prolonged inactivity worsens her back pain. On a Medical Source Statement of Ability to Do Work-Related Activity, Dr. Jones opined that plaintiff could sit for one hour, stand for 30 minutes, and walk for 30 minutes at one time without interruption; that she could sit for six hours if allowance was made for a change of position, and stand and walk one hour in an eight-hour day. He also opined that she could only occasionally handle, finger and push/pull with either hand; that she could occasionally lift up to 20 pounds; and occasionally carry up to 20 pounds. He identified these limitations as being caused by swollen fingers.

Defendant contends that the ALJ discussed Dr. Jones examination, and that her failure to specifically mention his opinion regarding certain limitations does not mean that she did not consider them. It is plaintiff's position that it was error not to state the amount of weight given to Dr. Jones's opinion because the ALJ's finding that she could perform jobs requiring frequent handling and fingering is at odds with Dr. Jones's assessment that she could only occasionally handle, finger, push and pull. Additionally, plaintiff contends that Dr. Jones's limitation that she needed to be able to change positions while sitting was not encompassed in the RFC.

Finally, the ALJ disagreed with the letter from plaintiff's treating physician, Dr. Chris Sandberg, where he stated that plaintiff was unable to work due to rheumatoid arthritis. The ALJ

found this opinion to be unsupported by medical history or testing, relying on the notation of Dr. Jones that the medical records did not find a rheumatoid factor, ANA or CRP.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). Only if the opinion is unsupported by medically acceptable clinical data may it not be given great weight. Smallwood v. Chater, 65 F.3d 87,89 (8th Cir. 1995). Even opinions not supported by acceptable clinical or diagnostic data, however, must be evaluated, taking into consideration the examining and treating relationship, the consistency, and other factors, according to agency regulations.

After a full review of the record and the ALJ's decision, the Court finds that is was error to not have given controlling weight to the treating physicians and medical providers in this case, and that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's impairments were not disabling. While the ALJ stated that there were inconsistencies and unsupported opinions, the Court finds that the medical records, as a whole, support a finding that plaintiff's impairments constitute a disability. There is nothing in the record to suggest that the opinions of Drs. Idiculla, Bronson, and Sandberg are not consistent with each other and with other substantial evidence in the record. In this case, plaintiff's long-term physician opined that she was unable to work because of rheumatoid arthritis, pain, fatigue and frequent absences from work. Dr. Idiculla, a consultative physician, found that she was unemployable. Dr. Sandberg, another treating physician, found that she was unable to work. Additionally, Dr. Jones, a rheumatologist specialist, included some limitations on handling,

feeling, pushing and pulling, and changing positions. It does not appear that the ALJ took these limitations into consideration, given that he only reviewed Dr. Jones's opinion, without comment. Regarding the other physicians, he gave their opinions little or no weight, even though they were basically consistent among themselves. The Court finds that the ALJ erred in discrediting the treating physicians' opinions, as well as other medical evidence in the record from a consultative physician.

In evaluating a plaintiff's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain, effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). In discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). It is not necessary, however, that the ALJ discuss each Polaski factor in a methodical fashion before discounting plaintiff's subjective complaints, provided that the ALJ acknowledged and considered those factors, and he may discredit complaints if there are inconsistencies in the record as a whole. Id. at 972.

Regarding the credibility determination, the ALJ focused on the level of plaintiff's daily activities. While plaintiff testified regarding household activities that she performed, it is clear that she worked at a slow pace with repeated breaks. Additionally, her doctors indicated that she exerted excellent effort, and there was no evidence from any of the medical experts that she exaggerated her symptoms. The law is abundantly clear that the ability to do some daily chores does not demonstrate the ability to perform job tasks on a daily basis, in the real world. McCoy

v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982).  Further, it is clear that plaintiff had a long work history, which was interrupted by health problems.  The fact that she takes a variety of potent medication, for a number of problems, and that her treating physician documented that the medication could cause drowsiness, also bolsters her credibility.  The Court finds that there is not substantial evidence to conclude that the level of her daily activities should serve to discredit her  testimony, or that her years of working should be held against her.  Based on the totality of the record, the Court finds that it was error for the ALJ to have found plaintiff only partially credible.

Based  on a full review of the record, the Court finds, therefore, that the ALJ erred in not affording significant weight to the opinions of plaintiff's treating sources.  She also erred in finding plaintiff to be only partially credible.  There is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled and that she could perform her past relevant work.  Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted.  It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.


/s/ James C. England
 JAMES C. ENGLAND
 United States Magistrate Judge

Date:    9/20/01